UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JANELLA MACK and JOHN LYND, *on behalf of*
*themselves and all others similarly situated*,

                                    Plaintiffs,

               v.

FCA US LLC,

                                 Defendant.
------------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
24-CV-02990-SJB-SIL

**BULSARA, United States District Judge:**

      This products liability class action, brought by Plaintiffs Janella Mack ("Mack")

and John Lynd ("Lynd" and collectively "Plaintiffs"), concerns an allegedly faulty

gearshifter manufactured by Defendant FCA US LLC ("Chrysler") and used in certain

Dodge, Chrysler, and Jeep vehicles.  The case has a long and complex history: initiated

here in 2016, it was first transferred to the Eastern District of Michigan (the "MDL

Court") and consolidated into a multidistrict litigation.  Now, several years later—after

multiple rounds of class certification practice and a trial cabined to issues about an

alleged design defect in the gearshifter—it has been remanded back here for final

resolution.

      Prior to the trial, the MDL Court certified a class of individuals from 21 different

states who had purchased or leased a vehicle with a gearshifter (the "Issues Class").

The trial was intended to resolve three issues for the Issues Class: whether the

gearshifter had a design defect, whether Chrysler had concealed the defect, and

whether the concealment was material.  Although they were members of the certified

class, the claims of New York residents were excluded from the trial itself.  After the trial—which was largely resolved in Chrysler's favor—the MDL Court rejected Chrysler's attempt to use the favorable verdict against the New York class members.  It then remanded the New York case back to this Court for final resolution.

Plaintiffs now seek to amend the certified class.[1]  Their proposal differs from the class certified by the MDL Court in two ways: *first*, their class is now limited to those who purchased or leased a vehicle before a 2016 Chrysler recall, whereas the certified class lacked such a time limitation; and *second*, their proposal attempts to change the type of class that was certified.  The class authorized by the MDL Court was certified solely for three limited issues (design defect, concealment, and materiality), thereby leaving all other matters—like damages and consumer protection claims—for resolution in individual lawsuits.  But now, Plaintiffs are asking for certification of a class that resolves *all* claims and issues on a class-wide basis.  Essentially, Plaintiffs are

---

[1] "Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities[.]"  *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015).  But here, there was a consolidated complaint filed with the MDL Court, robbing the case of its individual identity; and indeed, the Issues Class was certified on the basis of the consolidated complaint.  *See id.* at 413 n.3 ("Parties may elect to file a 'master complaint' and a corresponding 'consolidated answer,' which supersede prior individual pleadings.  In such a case, the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings.").

On remand, Plaintiffs have not attempted to differentiate themselves from the plaintiffs in the MDL case (the "MDL Plaintiffs"), or the MDL proceedings, in any way.  As explained herein, the Amended Complaint filed on remand is virtually identical to the consolidated MDL complaint (indeed, it pleads the existence of a putative nationwide class), and their motion seeks relief for the New York class by relying on the provision of Rule 23 that permits amendment of a class—here, the Issues Class—that was first certified by the MDL Court.  And counsel (*i.e.*, the law firms of record) for Plaintiffs who filed the present motion for class certification also each represented the MDL Plaintiffs in the MDL Court.

2

trying to both narrow and expand the class: limit it to individuals who had purchased or leased a vehicle prior to the recall, but expand the scope of the certification to cover all issues pertinent to Chrysler's liability and potential damages.

This is not the first time Plaintiffs have made such a request to amend the temporal scope of the class. It is the third. The MDL Court previously twice rejected the same request. And it is also not the first time Plaintiffs have sought to certify a broader class that resolves all claims. It is the third, having failed twice before. And Plaintiffs made the present request to this Court ignoring—and indeed, never mentioning—that the MDL Court considered and denied the exact same relief. Given the resources spent on this case, this cannot be viewed as mere oversight. Plaintiffs' renewed requests are barred by law of the case doctrine and their motion is denied. In light of Plaintiffs' renewed attempt to do what the MDL Court twice said it could not, Chrysler has filed a motion to strike the motion and for sanctions. In the second half of this opinion, the Court denies the motion to strike, but grants the motion for sanctions.

Separately, Chrysler has moved for summary judgment, seeking to have all the New York class members' claims dismissed. The motion repeats many arguments that were previously rejected. That said, Chrysler is granted summary judgment as to all of Plaintiffs' claims but one, brought pursuant to General Business Law ("GBL") § 349.

## I.    The Class Certification Motion

### A.    Factual Background and Procedural History

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  Rule 23 defines the types of classes that may be certified.  For all classes, certification has four threshold requirements: numerosity, commonality, typicality, and adequacy of representation.  *Dukes*, 564 U.S. at 349; Fed. R. Civ. P. 23(a).  In addition, the class must typically fall within one of the "types of class actions" defined in Rule 23(b).  One such type is the "predominance class," set forth in Rule 23(b)(3), which "imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015).  For such a class to be certified, "[c]ommon questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3)).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *id.* at 623, and the "requirement is satisfied 'if resolution of some of the legal or factual questions . . .  can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  The advantages to certifying a "predominance" or Rule 23(b)(3) class are manifold; it achieves "economies of time, effort, and expense, and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Amchem*, 521 U.S. at 615.

4

Should a class fail the rigorous predominance inquiry, all is not lost.  Rule 23(c)(4) permits certification of a class "with respect to particular issues."  *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (quoting Fed. R. Civ. P. 23(c)(4)).  Such certification is possible if common questions of fact or law predominate solely with respect to the issue being resolved.  "[A] party seeking certification of an issue class under Rule 23(c)(4) must show that common questions predominate in the resolution of the specific issue or issues that are the subject of the certification motion and not as to 'the cause of action, taken as a whole.'"  *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 897 (7th Cir. 2024) (quoting *Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350, 355 (5th Cir. 2005)).

In certifying an issues class, the "advantages and economies of adjudicating issues that are common to the entire class on a representative basis [are] . . . secured even though other issues in the case may need to be litigated separately by each class member."  7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1790 (3d ed. 2005); *see also Nassau Cnty. Strip Search Cases*, 461 F.3d at 227 ("[C]ommentators agree that courts may use subsection (c)(4) to single out issues for class treatment when the action as a whole does not satisfy Rule 23(b)(3).") (following Wright & Miller); *e.g.*, *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 109 (2d Cir. 2007):

> On remand, if the district court concludes that the action ought not to be certified in its entirety because it does not meet the predominance requirement of Rule 23(b)(3), [Plaintiff] may seek certification of a class to litigate the first element of their antitrust claim—the existence of a Sherman Act violation—pursuant to Rule 23(c)(4)(A)[.]

5

But because certification of an issues class still requires the non-common issues to be individually resolved—in separate lawsuits, potentially in state and federal fora spread throughout the United States—it may be a less desirable outcome for plaintiffs than a predominance class. *E.g.*, *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) ("A class certified under Rule 23(c)(4) resolves the *issue*, not the whole case. Class members would receive the benefit of a declaratory judgment (if the class prevails) on the issue but would need to proceed in individual suits to seek damages[.]" (emphasis in original)). From a plaintiff's perspective, litigation is more piecemeal; costs are higher; resolution takes longer; and the advantage of aggregate treatment (including efficiencies in litigation costs and leverage for settlement) are diminished, perhaps substantially.[2]

---

[2] However, that is just one side. There can be significant efficiencies gained—as the MDL Court found in this case—from the issues certification approach. *See* Jon Romberg, *Half a Loaf Is Predominant and Superior to None: Class Certification of Particular Issues Under Rule 23(c)(4)(A)*, 2002 Utah L. Rev. 249, 299 (2002):

> Often, issue certification is superior to repeated individual litigation or to other methods of formal or informal aggregation, all of which are less efficient in requiring repeated resolution of common issues; in many instances, these methods are also less fair than the issue class. Issue certification is often a happy medium between individual cases and a global class action.

*See also Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003):

> If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.

> A partial class action goes even further; absent class members' individual issues are not certified for resolution within the lawsuit, thereby making settlement more difficult . . . .  It also lessens what class action critics consider overwhelming pressure on defendants to settle so as to avoid the possibility of catastrophic loss.

Romberg, *supra* note 2, at 326–27.

> Most notably, the issue class is not as efficient as Rule 23(b) certification of an *entire* class.  Because Rule 23(c)(4) only allows certification of a *portion* of the case, it is simply less efficient, as a number of issues in each case will still have to be resolved on an individual basis.  Issue class certification can thus be more cumbersome compared to the traditional class action.

Joseph A. Seiner, *The Issue Class*, 56 B.C. L. Rev. 121, 155 (2015) (emphasis in original).

One can, therefore, understand why these Plaintiffs would like to have a predominance class certified.  But now the question is not whether it is appropriate to certify a Rule 23(c)(4) issues class or a Rule 23(b)(3) predominance class.  Those ships have sailed.  Twice.  Rather, the question is: having now lost before the MDL Court, whether Plaintiffs can renew and relitigate their class certification motions here.  The answer is, without question, no.

### 1.    Commencement in the Eastern District of New York

Mack and Michael Cruz[3] commenced this case as a putative class action in the Eastern District of New York on July 26, 2016, alleging that Chrysler manufactured and

---

[3] Mack originally commenced the case with Michael Cruz ("Cruz").  (Compl. dated July 26, 2016 ("Compl."), Dkt. No. 1).  On May 19, 2017, Cruz was voluntarily dismissed without prejudice.  (Notice of Voluntary Dismissal dated May 19, 2017, Dkt. No. 10).

Among the cases transferred to the MDL Court and consolidated into the MDL case, one other also originated in New York: *Lynd v. FCA US, LLC*, No. 16-CV-984 (N.D.N.Y. filed Aug. 8, 2016).  (Conditional Transfer Order dated Oct. 14, 2016, *MDL Case*, Dkt. No. 3).  After remand, Mack filed a motion to consolidate this case with *Lynd*, which Judge Joanna Seybert granted.  (Order to Consolidate Cases and Set Deadline for Filing of Consolidated Am. Compl. dated June 12, 2024, Dkt. No. 42).

installed a defective and unreasonably unsafe vehicle gearshifter, knew of its dangers, and yet failed to disclose the risks to consumers. (Compl. ¶¶ 1–5, 12–27). They alleged that the gearshifter (often alternatively referred to as a "monostable" or "monostable shifter") operated electronically, with a mechanism to "spring[] back to a centered or neutral position" after a gear change, and therefore, lacked "separate and identifiable position[s] for each gear setting"—a defect that allowed drivers to exit a running vehicle if not in "Park." (*Id.* ¶¶ 14–15). Furthermore, the design did not contain a safety override mechanism that would "automatically place[] the car in Park when drivers attempt[ed] to exit the vehicle with the engine running[.]" (*Id.* ¶ 15). Despite recognizing the gearshifter's dangers, Chrysler allegedly "failed to promptly notify customers about this safety hazard through a recall program," and opted to wait "eight months after the [National Highway Traffic Safety Administration's]" investigation to initiate a recall. (*Id.* ¶ 23). Plaintiffs also alleged that Chrysler knew of its unreasonable risks "from the moment" the gearshifters entered the market. (*Id.* ¶ 25).

Shortly after the case was filed, pursuant to an order from the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel"), it was transferred to the Eastern District of Michigan. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 214 F. Supp. 3d 1354, 1356 (U.S. Jud. Pan. Mult. Lit. 2016).

### 2.    The MDL Litigation

Upon transfer, this case was merged into a consolidated multidistrict class action. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 100–03 (E.D. Mich.

2019), *reconsideration denied*, 340 F.R.D. 251, 252 (E.D. Mich. 2022) [hereinafter *MDL Case*].[4]

In their Second Amended Consolidated Complaint ("MDL Complaint"), filed on December 8, 2017, the MDL Plaintiffs pled the existence of a putative nationwide class and 26 subclasses, categorized by state.  (Second Am. Consolidated Master Class Action Compl. dated Dec. 8, 2017 ("MDL Compl."), *MDL Case*, No. 16-MD-2744, Dkt. No. 182 ¶ 236).  For the nationwide class, the MDL Plaintiffs brought a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–12.  (*Id.* ¶¶ 246–59).  For the New York subclass, "[a]ll members of the Nationwide Class who are residents of New York or purchased their Class Vehicle in New York," (*id.* ¶ 236), they alleged violations of GBL § 349 and § 350, breach of express warranty, fraudulent concealment, and unjust enrichment.  (*Id.* ¶¶ 1137–87).

The MDL Complaint focused on approximately 800,000 vehicles sold with a monostable gearshifter that the MDL Plaintiffs alleged was defective—the 2012-2014 Dodge Charger, the 2012-2014 Chrysler 300, and the 2014-2015 Jeep Grand Cherokee—due to "its confusing interface design."  *MDL Case*, 334 F.R.D. at 101.[5]  The MDL Plaintiffs acknowledged that in April 2016 Chrysler initiated a recall, and subsequently employed a software fix ("Auto Park") to prevent drivers from exiting the vehicle when

---

[4] All decisions by the MDL Court and all filings in the MDL Case will be referred to with the shortened cite, "*MDL Case*."

[5] The shifter allegedly "inhibits reliable gear selection and provides insufficient tactile or audible feedback to allow drivers to readily and confidently shift to their intended gear."  *Id.* (quotations omitted).

not in "Park"; but they alleged that despite this fix, "the problems with the shifter's confusing design and operation" remained. *Id.* at 101–02. The claimed damages were "due to overpaying for new vehicles" that buyers believed were safe, but were "difficult and dangerous" to drive. *Id.* at 102.

The MDL Plaintiffs moved to certify two different classes. (Mot. for Class Certification dated Jan. 31, 2019 ("MDL Pls.' Mot. for Class Certification"), *MDL Case*, Dkt. No. 286); *MDL Case*, 334 F.R.D. at 104. *First*, they sought to certify a nationwide class of all current owners or lessors of a defective vehicle under Rule 23(b)(2), *i.e.*, a class that would receive only injunctive or declaratory relief. *MDL Case*, 334 F.R.D. at 104. The MDL Court denied that motion, noting that such a class can only be certified if monetary damages are "incidental" to claims for "injunctive or declaratory relief." *Id.* at 108 (quoting *Dukes*, 564 U.S. at 360). But the MDL Plaintiffs were seeking far more than incidental monetary damages: "the main thrust" of their Complaint was to recover damages for the loss of value of vehicles with the defective shifter. *Id.* at 107. And that made it impossible for them to obtain certification of a class centered around injunctive relief. *Id.*

*Second*, the MDL Plaintiffs sought certification of Rule 23(b)(3) predominance subclasses based on common state law claims. The request proposed two options: (1) 16 subclasses defined by "commonality of certain elements of the[] causes of action under various rules of state law," *id.* at 108; or (2) 23 subclasses—one for each state in which class members lived. *Id.*; (MDL Pls.' Mot. for Class Certification at 7–8). But unlike the nationwide class—where members were then owners or lessors of the identified

10

vehicles—the proposed state law subclasses were limited to those who had purchased

or leased vehicles between 2011 and April 22, 2016, the date of the recall.  (MDL Pls.'

Mot. for Class Certification at 1–2, 7).  The MDL Court denied the certification of these

Rule 23(b)(3) subclasses as well.  *MDL Case*, 334 F.R.D. at 117.  The MDL Plaintiffs had

"come up short on establishing that common issues predominate over individual

questions for either state-by-state or cross-state class certification of any of their pleaded

causes of action."  *Id.*

Nonetheless, the MDL Court certified a Rule 23(c)(4) Issues Class on three topics:

(1) "[w]hether the monostable gear shift has a design defect that renders the class

vehicles unsuitable for the ordinary use of providing safe transportation," (2)

"[w]hether the defendant knew about the defect and concealed its knowledge from

buyers of the class vehicles," and (3) "[w]hether information about the defect that was

concealed would be material to a reasonable buyer."  *Id.*  Members of the Issues Class

were:

> all persons or entities who currently own or lease a class vehicle, which
> means a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, or 2014-2015
> Jeep Grand Cherokee equipped with the monostable shifter, where the
> vehicle was purchased in Arizona, California, Colorado, Florida, Illinois,
> Iowa, Louisiana, Maryland, Massachusetts, Michigan, Nevada, New Jersey,
> New York, North Carolina, Ohio, Oregon, Pennsylvania, Texas, Utah,
> Washington, or Wyoming[.]

*Id.*  That is, the Issues Class included individuals who then-owned or leased the

identified vehicles (regardless of purchase date) and bought the vehicle in one of the 21

states.  Additionally, the Court appointed the same named individuals who began their

11

respective cases in New York—*i.e.*, Mack and Lynd—as the class representatives for the New York class members. *Id.*

The MDL Plaintiffs then asked to amend the class definition by replacing the phrase those "who currently own or lease a class vehicle" with "who have purchased or leased a class vehicle." (Pls' Mot. to Amend the Class dated Dec. 23, 2019 ("MDL Pls.' Mot. to Amend the Class Definition"), *MDL Case*, Dkt. No. 496 at 1). In other words, they sought to swap owners and lessors with *purchasers* and lessors. But they did not ask for that universe to be limited to those who purchased or leased a vehicle prior to the April 2016 recall. (*See id.*). The MDL Court granted the motion, redefining the Issues Class as requested.[6] (*Id.* at 1). Based on this revised class definition, notice was mailed to 767,256 class members nationwide. *MDL Case*, 2022 WL 4211149, at *1 (E.D. Mich. Sept. 12, 2022). And 187 class members opted out of the class. *Id.*[7]

The MDL Court then scheduled a jury trial (the "Issues Trial") on the three certified class issues: design defect, concealment, and materiality. (Order Setting Trial Date dated Apr. 4, 2022, *MDL Case*, Dkt. No. 757).[8] It, however, cabined the Issues Trial

---

[6] The class excluded anyone who "brought a claim against [Chrysler] alleging recovery for bodily injuries caused by those vehicles under any legal theory[.]" (Order Granting Pls.' Mot. to Amend Class Definition dated Jan. 10, 2020, *MDL Case*, Dkt. No. 510 at 1–2).

[7] Prior to trial, Chrysler sought summary judgment on the three issues. *MDL Case*, 2022 WL 998091, at *1 (E.D. Mich. Mar. 31, 2022). Finding that the MDL Plaintiffs had presented enough evidence to necessitate a jury trial, the MDL Court denied the motion. *Id.* at *1.

[8] On May 18, 2020, Chrysler moved to decertify the Issues Class. *MDL Case*, 340 F.R.D. 251, 252 (E.D. Mich. 2022). Chrysler challenged the MDL Court's authority to

to 19 states—*i.e.*, it excluded from adjudication the claims and parties of the cases transferred in from New York and California.  *MDL Case*, 2022 WL 19001834, at *3. (However, New York and California buyers and lessors remained members of their certified class; their trials would simply come later.[9])

At the final pretrial conference, Plaintiffs' counsel suggested it was narrowing the scope of the Issues Class even further, to include only members who had purchased or leased a vehicle *prior* to the recall date of April 22, 2016, or with a software fix already installed.  (Tr. of Mot. Hr'g dated Aug. 24, 2022, *MDL Case*, Dkt. No. 818 at 14:12–24 ("[Plaintiffs' counsel]: First, we would agree to a cutoff for the class as of April 22, 2016. . . .  I think I should have notified your Honor of that, that it was open ended and sought clarification.  I didn't. . . . Our case is only through the time period of April 22, 2016."), 15:12–14 ("[Plaintiffs' counsel]: "[N]one of the folks in the issues trial that we

---

certify the Issues Class.  *Id.* at 253.  The MDL Court denied the motion, one it viewed as "more properly characterized as a motion for reconsideration [of the class certification decision.]"  *Id.* at 252.  And as a reconsideration motion, it was untimely and without merit.  *Id.* at 255.  Following the denial, Chrysler moved to remand four cases transferred to the MDL Court—including this present case and *Lynd*, contending that remand was required before trial.  *MDL Case*, 2022 WL 4211149, at *1; *see MDL Case*, 2022 WL 19001834, at *1 (E.D. Mich. July 27, 2022).  The MDL Court denied that motion. *MDL Case*, 2022 WL 19001834, at *3.

[9] The MDL Court, in denying Chrysler's motion to remand the transferred cases, concluded that it would hear motions after the Issues Trial "on the questions [of] whether and to what extent the results of the issue trial may, by operation of law, be binding on parties and absent class members[.]"  *Id.* at *3.

are prosecuting on behalf of, the whole gravamen of our case does not include people who bought cars with auto-park.")).[10]

In furtherance of this new approach, the MDL Plaintiffs asked for additional questions to be posed to the jury—questions that "essentially would alter both the class definition and the nature of the questions certified for trial."  *MDL Case*, 2022 WL 4211149, at *1; *see also id.* at *3 ("[T]he motion essentially is a belated attempt to alter the class definition and partition the class into sub-classes of persons who bought or leased their vehicles before and after the auto park recall.").  The MDL Court denied the motion—and the request for the same relief made at the pretrial conference—noting that the time to amend had long elapsed:

> By any stretch, the plaintiffs' tardy attempt to redefine the scope of the class on the eve of trial is woefully untimely and procedurally improper.  Class certification was granted in this case in December 2019, more than two years and eight months ago.  The plaintiffs previously moved to amend the class definition, but they never raised the issue of the date cutoff. . . .  [T]he Court denied the motion to certify a 23(b)(3) class, and instead certified a 23(c)(4) common issues class.  Moreover, class notice has gone out to more than 760,000 absent class members without regard to the date of purchase of the class vehicles.  The time for raising any purported issues with the class definition came and went long ago, and the plaintiffs never presented any such concerns to the Court until the final pretrial conference.  Any alteration of the class definition at this late date would be profoundly disruptive and prejudicial.

*Id.* at *2.

The Issues Trial commenced on September 6, 2022.  (Min. Entry dated Sept. 6, 2022, *MDL Case*).  The jury was asked three questions.  The first question asked whether

---

[10] Based on these statements, and the attempted alteration of the class scope, Chrysler moved again to decertify the class.  The motion was denied.  *MDL Case*, 2022 WL 4211149, at *6.

the gearshifter had a design defect.  (Jury Verdict dated Sept. 20, 2022 ("Jury Verdict"), *MDL Case*, Dkt. No. 853 at 1).  The jury was instructed as to state-specific law for each of the 19 states represented in the trial and asked to answer "yes" or "no" for each state. (*Id.* at 1–4).  The second question asked, for each state where the jury found a defect, "whether [Chrysler] knew about the defect and concealed its knowledge from buyers[.]"  (*Id.* at 4–5).  If the jury found that to be the case, then it was to determine whether information about the concealed defect would be "material to a reasonable buyer."  (*Id.* at 5).

On the first issue, design defect, the jury determined that of the 19 states, only in Utah did the vehicles have a design defect.  (*Id.* at 1–4).  On the second issue, concealment, the jury determined that Chrysler had not concealed knowledge of the defect.  (*Id.* at 4–5).  As a result, the jury did not reach the third and final issue, materiality.  (Jury Verdict at 5–6).  The jury was not instructed on the laws of New York or California, nor did it make any determinations about a design defect, concealment, or materiality in those states (since the New York and California class members were excluded from the Issues Trial).[11]

---

[11] Yet after the verdict, Chrysler sought to apply the jury's verdict to the state law claims for purchasers from California, New York, and Missouri.  It argued that the definition of design defect in California, New York, and Missouri "parrot[ed]" the definition of design defect in the 18 states where the jury find no defect, and as such, the "no defect" finding was also binding on these class members.  *MDL Case*, 685 F. Supp. 3d 540, 542, 548 (E.D. Mich. 2023).  In denying the motion, the MDL Court reiterated that New York and California class members had not participated in the trial, and therefore, there was no preclusive effect.  *Id.* at 555–58.

The MDL Plaintiffs then moved again to certify two Rule 23(b)(3) predominance classes, composed of individuals who had purchased or leased a vehicle before April 22, 2016, in either New York or California.  *MDL Case*, 2024 WL 1142348, at *1 (E.D. Mich. Mar. 15, 2024); (Pls.' Mot. for Class Certification dated Oct. 21, 2022 ("MDL Pls.' Second Mot. for Class Certification"), attached as Ex. J to Decl. of Ian K. Edwards in Supp. of Chrysler's Mot. to Strike dated Mar. 14, 2025, Dkt. No. 62-12).  In other words, the MDL Plaintiffs moved to certify classes identical to the subclasses they previously sought to certify—an attempt the MDL Court denied years earlier.  (MDL Pls.' Second Mot. for Class Certification at 3); *see supra* 10–11.  And again, the MDL Plaintiffs attempted to change the temporal scope of the class to include pre-2016 recall claims.  (MDL Pls.' Second Mot. for Class Certification at 3).  In response, Chrysler filed a motion to strike the MDL Plaintiffs' motion.  *MDL Case*, 2024 WL 1142348, at *2.

The MDL Court denied the motion for class certification and granted the motion to strike:

> In their present motion, the plaintiffs essentially ask for a do-over, except they confine their request (by necessity after the jury's verdict) to the surviving causes of action under New York and California law. . . .  The Court never granted leave to file any second or subsequent motion for class certification, and the present motion amounts to an attempt to secure the same relief that was denied by the Court more than five years ago in the ruling on the plaintiffs' original class motion. . . .  The plaintiffs' motion— or renewed motion—for class certification in substance constitutes a request for reconsideration of the Court's 2019 ruling that denied the same relief that now is sought once again.

*Id.* at *3–*4.  The MDL Panel then ordered a remand of the transferred cases, including the present case.  (Conditional Remand Order dated Mar. 27, 2024, *MDL Case*, Dkt. No. 927).

### 3.    The Return to the Eastern District

Plaintiffs filed a consolidated Amended Complaint in this case on June 25, 2024. (Pls.' Consolidated Am. Compl. dated June 25, 2024 ("Am. Compl."), Dkt. No. 44).  The case was reassigned to the undersigned on January 7, 2025.  (Case Reassignment Notice dated Jan. 7, 2025).

The Amended Complaint is virtually identical to the MDL Complaint from December 2017.  (*Compare* Am. Compl. ¶¶ 1–28, 46–147, 149–171, 172–222, *with* MDL Compl. ¶¶ 1–28, 134–235, 237–259, 1137–87).  Like the MDL Complaint, the Amended Complaint contains six causes of action on behalf of Plaintiffs themselves and the certified classes.  It alleges the existence of a nationwide class based on MMWA violations.  (Am. Compl. ¶¶ 158–71).  For the New York subclass, it alleges a violation of GBL § 349, (*id.* ¶¶ 172–79); GBL § 350, (*id.* ¶¶ 180–88); breach of express warranty, (*id.* ¶¶ 189–201); fraudulent concealment, (*id.* ¶¶ 202– 213); and unjust enrichment, (*id.* ¶¶ 214–222).

### B.    The Motion to Amend the Class Definition

The effect of the prior MDL proceedings, followed by remand, leaves this case in the following posture: the Issues Class remains certified for New York class members, and those issues can proceed to trial here.  Following such a trial, all other issues would have to be resolved in individual suits, not on a class basis.  Plaintiffs are not content with such an outcome.  Plaintiffs now seek yet again to change the class certified by the MDL Court.  (Pls.' Mot. to Amend the Class Definition dated Feb. 17, 2025 ("Pls.' Class Amendment Mem. of Law"), Dkt. No. 60-1 at 1).  They ask the Court to bless a class of

"[a]ll persons or entities who purchased or leased a 'Class Vehicle' between January 1, 2011, until April 22, 2016 (the 'Class Period') in New York." (*Id.*). And the amendment seeks not just to change the scope of the Issues Class—limiting it to pre-recall purchasers and lessors, but also the type of class—from one focused on three discrete issues to one that resolves all issues on a class basis, as a Rule 23(b)(3) predominance class. (*Id.*). This ground has been tread, and retread, over and over. Yet, perhaps in a deliberate attempt to mislead this Court, Plaintiffs' motion neglects to mention the prior failed attempts at certifying this identical class, and the prior failed attempt to alter the class definition. The obfuscation cannot hide what is plain and obvious: the motion is barred by law of the case. As Chrysler correctly points out, this is the "third attempted bite at the same certification apple." (Chrysler's Opp'n to Pls.' Mot. to Amend the Class dated Mar. 17, 2025, Dkt. No. 60-47 at 1). Plaintiffs cannot undo their prior failures in a new forum.

"[L]itigants [who] once battled for the court's decision . . . should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964). As such, "[t]he law of the case doctrine, although not binding, 'counsels a court against revisiting its prior rulings in subsequent stages of the same case absent "cogent" and "compelling" reasons,' including . . . 'the need to correct a clear error or prevent manifest injustice.'" *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (quoting *Ali v. Mukasey,* 529 F.3d 478, 490 (2d Cir. 2008)); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988):

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do

18

> so in the absence of extraordinary circumstances such as where the initial
> decision was "clearly erroneous and would work a manifest injustice."

(quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1984)).  Compelling reasons include "an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'"  *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009) (quoting *United States v. Quintieri,* 306 F.3d 1217, 1230 (2d Cir. 2002)).

      "The doctrine is particularly applicable in multidistrict litigation where the claims of numerous diverse parties might otherwise result in continuous relitigation of the same issues."  *In re Jackson Nat. Life Ins. Co. Premium Litig.*, 209 F.R.D. 134, 138 (W.D. Mich. 2002).  Consequently, "[i]t is well-established that '[o]rders issued by a federal transferee court remain binding if the case is sent back to the transferor court.'"  *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 428 (E.D.N.Y. 2011) (quoting *In re Zyprexa Prods. Liab, Litig.*, 467 F. Supp. 2d 256, 273 (E.D.N.Y. 2006)); *e.g.*, *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705 (5th Cir. 2014) ("[T]he remand court properly applied the law of the case when it refused to reconsider the MDL court's rulings[.]").  "[A]ny reversal of the MDL court rulings would undermine the purpose of the Multi District Litigation Act, which authorizes the coordinated and consolidated pretrial proceedings of civil actions involving one or more common issues of fact 'for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions.'"  *Deutsch*, 768 F. Supp. 2d at 429 (quoting 28 U.S.C. § 1407(a)).  Thus, reversal "could lead to the type of inconsistent pretrial rulings that Congress sought to avoid, and therefore frustrate the very purpose of consolidation."  *Id.*; *see also* Ann. Manual Complex Lit. § 20.133 (4th ed. 2004) ("Although the transferor judge has the power to vacate or

modify rulings made by the transferee judge, subject to comity and 'law of the case' considerations, doing so in the absence of a significant change of circumstances would frustrate the purposes of centralized pretrial proceedings."); Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 702 (1987) ("[T]here is widespread recognition that remand courts generally must adhere to the rulings of [transferee] courts so as not to undermine those courts' efforts to afford uniform handling or to impair the efficiencies derived from such handling.").

Both aspects of the class that Plaintiffs now wish to alter—the temporal and substantive scope of the certified class—were litigated repeatedly in the MDL proceeding. Those issues have long been put to bed, and Plaintiffs—despite trying to avoid these decisions by ignoring them and shielding them from this Court—cannot escape them.

*First*, with respect to the temporal scope of the class, Plaintiffs amended the scope once, tried to do so again, and were rebuffed. Two weeks after the MDL Court certified the Issues Class on December 9, 2019, the MDL Plaintiffs sought to alter the class definition. (MDL Pls.' Mot. to Amend the Class Definition at 1). Their motion sought to define class members not as current owners or lessors of vehicles, but as purchasers or lessors. (*Id.*). The motion made no mention of limiting the class definition to pre-recall vehicles (or to limit the temporal scope in any way). *Supra* at 12. The motion was granted, (Order Granting Pls.' Mot. to Amend Class Definition dated Jan. 10, 2020, *MDL Case*, Dkt. No. 510), and the parties prepared for trial. Then on the eve of the September

2022 trial (nearly two years later), Plaintiffs sought to alter the class definition again—by "continu[ing] to press the point of a cutoff date"—to limit it temporally to pre-recall vehicles. *MDL Case*, 2022 WL 4211149, at *2. The MDL Court denied the motion, finding the "tardy attempt to redefine the scope of the class . . . woefully untimely and procedurally improper." *Id.* at *2; *see also id.* ("Class certification was granted in this case in December 2019 . . . . The plaintiffs previously moved to amend the class definition, but they never raised the issue of the date cutoff. . . . The time for raising any purported issues with the class definition came and went long ago[.]"). And then a second time, in their post-trial motion for class certification, the MDL Plaintiffs again sought to limit the class to pre-recall vehicles. (MDL Pls.' Second Mot. for Class Certification at 3). Yet here we are again. The request did not ripen with age.

Plaintiffs hide the fact that this is the third time they have attempted to alter the class definition, and that one prior attempt was found to be "woefully untimely." This history appears nowhere in Plaintiffs' opening brief. (*See* Pls.' Class Amendment Mem. of Law). The brief purports to detail the case's "Procedural History." (*Id.* at 11–12).

That recitation includes no reference to Plaintiffs' prior failed attempt to amend the temporal scope of the class.[12]

*Second*, with respect to the substantive scope of the Issues Class, the MDL Court already twice denied what Plaintiffs seek now: certification of a Rule 23(b)(3) class that permits the whole case to proceed on a class basis. The MDL Plaintiffs first moved for certification in January 2019, for a Rule 23(b)(3) class covering those who had purchased or leased a Class Vehicle prior to the 2016 recall. (MDL Pls.' Mot. for Class Certification at 1–2). The MDL Court denied this motion, choosing instead to certify the Issues Class. *MDL Case*, 334 F.R.D. at 110, 117. And after the conclusion of the Issues Trial, the MDL Plaintiffs moved again to certify a New York class, based on a predominance of common questions, of individuals who had purchased or leased prior to the date of the recall. *Supra* at 16; (MDL Pls.' Second Mot. for Class Certification at 3). Finding the motion "essentially [an] ask for a do-over," the MDL Court struck and denied the motion. *MDL Case*, 2024 WL 1142348, at *3–*4. Leave was never granted for a renewed

---

[12] Perhaps Plaintiffs believe that their failure to mention this prior history is justified by a new procedural posture: remand to this Court. The duty of candor to any federal court demands far more: given the plain displeasure of the MDL Court with counsel's tactics surrounding the temporal scope of the class and the extensive litigation around it, no reasonable lawyer could fail to mention it in a new motion for certification that sought amendment of the prior class. *See In re Gordon*, 780 F.3d 156, 161 (2d Cir. 2015) ("[T]he [attorney's] duty of candor is so basic[] and so important to proceedings before the Court[.]"); *Li v. Dolar Shop Rest. Grp., LLC*, No. 16-CV-1953, 2024 WL 794345, at *15 n.12 (E.D.N.Y. Feb. 9, 2024) ("Plaintiffs' counsel's efforts to reinvent the procedural history here, in an apparent effort to gain a litigation advantage notwithstanding the record . . . do not demonstrate the level of skill, candor, and zealous advocacy that courts must demand of class counsel under Rule 23."), *report and recommendation adopted*, (Feb. 26, 2024).

motion for certification, and the MDL Court found that the MDL Plaintiffs were trying to reconsider the original ruling denying certification, nearly three years later. *Id.* at *3.

With respect to these two prior denials, Plaintiffs' brief in support of class certification is misleading and deceptive. The "Procedural History" section makes no mention of the first 2019 attempt at class certification, and begins this "history" with the MDL Court's decision to certify the Issues Class. (Pls.' Class Amendment Mem. of Law at 11). Then the brief mentions the Issues Trial, but make no mention of the second motion for class certification after the trial. (*Id.* at 12). (Instead, Plaintiffs mention a denial of an attempt to certify a Utah class). And zero mention is made of the fact that the MDL Court *struck* the second certification mention. The only thing Plaintiffs bother to say in their opening brief about the prior certification decisions is that their new motion "would not run afoul" of the MDL Court's "findings regarding the propriety of class certification." (*Id.* at 13). That passing, contextless phrase fails to mention that the "findings" were *denials* of the exact same class Plaintiffs seek to certify again now. And nothing in that sentence gives any hint about a second motion, or that it was struck.

This dissembling cannot hide the MDL Court's decisions or their impact. Having already been denied in their attempt to modify the certified class—either in terms of temporal scope or to transform it into a Rule 23(b)(3) class—Plaintiffs' motion is barred by law of the case.

Plaintiffs nonetheless contend they are free to move for certification of a new class at any time under Rule 23(c)(1)(C). That rule provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R.

Civ. P. 23(c)(1)(C). They use this rule to dismiss law of the case concerns (and later to swat away sanctions), contending that this rule allows them to make multiple (even if entirely repetitive) motions for class certification.

Plaintiffs misapprehend Rule 23(c)(1)(C). To be sure, district courts "have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial." *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007). However, there must be a "compelling reason" to do so, such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015) (quotations omitted), *aff'd*, 829 F.3d 260, 264 (2d Cir. 2016). In other words, Rule 23(c)(1)(C) is consistent (and largely coextensive) with—and not an exception to—law of the case doctrine and the limits on reconsideration motions. *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009) ("This standard [in Rule 23(c)(1)(C)] echoes the law of the case doctrine, which advises a court to exercise caution in revising its earlier decision absent special circumstances."); *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) ("A court's reconsideration of its own earlier decision in a case may, however, be justified in compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice."). As such, law of the case doctrine has been applied regularly to bar relitigation of class certification decisions. 3 Newberg and Rubenstein on Class Actions § 7:35 (6th ed. 2022):

> Although Rule 23(c)(1)(C) itself states that a class certification order "may be altered or amended before final judgment," most courts apply a stringent

> "law of the case" approach to motions to reconsider initial class certification decisions. This choice stems from courts' reluctance to allow parties to have a second bite at the apple by relitigating issues that have already been decided, thereby incentivizing parties to put their best foot forward at the outset and avoiding costly delays to the proceedings.

*E.g.*, *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013) ("[A] court should be wary of revoking a certification order completely at a late stage in the litigation process. Defendants have made no showing of any significant intervening event or any compelling reason to revisit the issue. This motion . . . comes not merely at a late stage of this litigation, it comes post-trial after previous denials of defendants' motions to decertify[.]" (citations and quotations omitted)).

Yet Plaintiffs contend that Rule 23(c)(1)(C) permits them to file new and repeated motions for class certification, even without any changed circumstances, and regardless of rules prohibiting reconsideration. (Pls.' Opp'n to Chrysler's Mot. to Strike dated Apr. 11, 2025 ("Pls.' Mem. of Law in Opp'n to Strike"), Dkt. No. 62-20 at 7 (arguing that certification decisions are "inherently tentative"), 9–11 (arguing certification motions

are exempt from reconsideration rules)).  The position is legally untenable.[13]  *See Ward v. Sutter Valley Hosps.*, No. 19-CV-00581, 2023 WL 1824198, at *3 (E.D. Cal. Jan. 11, 2023) ("[D]istrict courts in this Circuit, as well as a majority of courts elsewhere, have applied the reconsideration standard to renewed class certification motions.") (collecting cases).[14]  In fact, one case Plaintiffs cite to suggest that the Court may "ignor[e] reconsideration arguments," (Pls.' Mem. of Law in Opp'n to Strike at 9), in the context

_____

[13] Plaintiffs rely on the Third Circuit's decision in *Hargrove v. Sleepy's LLC* to contend that no change in circumstances or new evidence is required and reconsideration is always permitted.  974 F.3d 467, 476 (3d Cir. 2020); (*see* Pls.' Mem. of Law in Opp'n to Strike at 9–10).  *Hargrove*'s approach is the outlier position.  3 Newberg and Rubenstein on Class Actions § 7:35 (noting uniqueness of *Hargrove*); *Williams v. Warner Music Grp. Corp.*, No. 18-CV-09691, 2021 WL 7448496, at *4 (C.D. Cal. Dec. 14, 2021) (observing that *Hargrove* is an "exception to th[e] otherwise 'uniform' approach" for applying Rule 23(c)(1)(C)).  And importantly, Third Circuit law was never relevant for this MDL.  *See also Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841, 845 (N.D. Ill. 2017) ("[I]n the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues[.]" (quoting *Parish v. Sheriff of Cook Cnty.*, No. 07-CV-4369, 2016 WL 1270400, at *1 (N.D. Ill. Mar. 31, 2016))), *aff'd*, 910 F.3d 285, 286 (7th Cir. 2018).  As for the naked statements in Second Circuit decisions that merely quote Rule 23(c)(1)(C)—*Initial Pub. Offering Sec. Litig.*, 483 F.3d at 73; *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014); (*see* Pls.' Class Amendment Mem. of Law at 12–13)—the relevant issues, like how law of the case and reconsideration bars interact with Rule 23(c)(1)(C), were never presented.  The cases are procedurally inapposite to the present one.

[14] The cases cited in Plaintiffs' motion for class certification, (*see* Pls.' Class Amendment Mem. of Law at 12–13), are not to the contrary.  *E.g.*, *J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. at 133 (applying law of the case to the certification ruling in part, and otherwise amending the certification in light of subsequent changes); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 603 (S.D.N.Y. 2018) ("[W]e are loathe to make class certification an iterative process and strongly believe that proponents of class certification should be diligent in establishing their compliance with class certification requirements the first time around[.]").  These cases have some changed circumstances, something not present here.  *E.g.*, *Boucher v. Syracuse Univ.*, 164 F.3d 113, 119 (2d Cir. 1999) (addressing mootness of injunctive relief class based on defendant's ameliorative measures).

of a Rule 23(c)(1)(C) motion, granted the motion because of "a fuller development of facts." *In re FleetBoston Fin. Corp. Sec. Litig.*, No. 02-CV-4561, 2007 WL 4225832, at *29 (D.N.J. Nov. 28, 2007).[15]

In other words, if there has been some changed circumstance—new evidence or law, for instance—the discretionary prohibitions on law of the case and reconsideration give way; the fact that the motion is brought under Rule 23 or through some other vehicle is of no moment. A class action certification decision is not more tentative or easier to reconsider than any other kind of decision. When there has been no changed circumstance, and the same motion is refiled twice or three times over—like in the present case—Rule 23(c)(1)(C) does not give the motion any extra right to be exempt from the bars on relitigation.[16] *Williams*, 2021 WL 7448496, at *4 ("Rule 23(c)(1)(C) is not

---

[15] Plaintiffs' statement that "courts in this District and others regularly grant class certification motions even after an initial denial of that relief without requiring compliance with reconsideration rules," (Pls.' Mem. of Law in Opp'n to Strike at 10 (citing *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-02738, 2021 WL 234550, at *36 (E.D.N.Y. Jan. 19, 2021))), suggesting that the requirement is waived or inapplicable, is a misleading presentation. *B & R Supermarket, Inc.* contains no discussion of either reconsideration or law of the case. 2021 WL 234550, at *36. And with good reason—the court had denied the prior motion for certification without prejudice to permit the parties to conduct additional discovery. *B & R Supermarket, Inc. v. MasterCard Int'l Inc.*, No. 17-CV-02738, 2018 WL 1335355, at *13 (E.D.N.Y. Mar. 14, 2018). In other words, the earlier procedural history of this case and others—which Plaintiffs do not present—shows the court inviting the second motion. The other cases cited are the same position. (Order Denying Without Prejudice Mot. to Certify Class dated July 6, 2021, *Headly v. Liberty Homecare Options, LLC*, No. 20-CV-00579 (D. Conn.), Dkt. No. 50); *Diaz v. Residential Credit Sols., Inc.*, 299 F.R.D. 16, 18 (E.D.N.Y. 2014); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 241 F.R.D. 182, 184 (S.D.N.Y. 2007).

[16] Plaintiffs' position would also do violence to Rule 16 scheduling orders that set dates for filing class certification motions. *E.g.*, *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 17-CV-35, 2020 WL 7314794, at *3 (C.D. Cal. Nov. 30, 2020):

a separate mechanism by which a party can seek reconsideration of a prior order relating to class certification.  Rather it is simply a provision authorizing the court to alter or amend an order relating to class certification at any time prior to judgment." (quotations omitted)).

Indeed, in other parts of their papers, Plaintiffs acknowledge that Rule 23(c)(1)(C) requires new facts, a change in circumstances, or intervening events.  (*See* Pls.' Class Amendment Mem. of Law at 13; Pls.' Reply in Supp. of Mot. to Amend dated Apr. 11, 2025, Dkt. No. 60-54 at 1).  But all along this case they have only been giving lip service to the requirement, simply filing as motions to "amend or alter" what are really reconsideration or new certification motions.  When the MDL Court denied Plaintiffs' second motion for certification, it noted the absence of any changed circumstances.

---

Plaintiffs argue that the Rule 16 inquiry does not apply here.  Plaintiffs are incorrect.  As Plaintiffs seek to file an untimely motion for class certification, the Court's Scheduling Order setting the final deadline to file such motion would need to be modified. . . .  [T]he Court set September 13, 2019, as the last date to file a motion for class certification.  Plaintiffs' Motion, filed a year past that deadline, is untimely and would require the Court to modify the case schedule.  As Plaintiffs fail to address why good cause exists to modify the deadlines in this case, Plaintiffs' Motion should be denied on this basis alone.

(citations omitted); *Gustafson v. BAC Home Loans Servicing, LP*, No. 11-CV-915, 2014 WL 10988335, at *2 (C.D. Cal. Feb. 5, 2014) (denying renewed motion for class certification because of deadlines in Rule 16 order).

The MDL Court set a 2019 deadline for filing certification motions.  (Pretrial Order No. 15: Amending Case Management Benchmarks dated June 26, 2018, *MDL Case*, Dkt. No. 250).  And it "never granted leave to file any second or subsequent motion for class certification[.]"  *MDL Case*, 2024 WL 1142348, at *3.  This Court never altered that original deadline or granted leave.  Plaintiffs simply thought they could again abuse the MDL Court's scheduling orders and file this renewed motion in this Court.  This is another reason their conduct is being sanctioned.

*MDL Case*, 2024 WL 1142348, at *4 ("[T]he underlying facts and circumstances pertinent to the claims of the New York and California plaintiffs have not changed since 2019 in any way that would alter materially the reasoning on which the Court relied when it refused to certify a 23(b)(3) class and instead certified the 23(c)(4) issue class.").  And again, here, Plaintiffs fail to point to any such circumstances or evidence in their class certification motion.  (*See* Pls.' Class Amendment Mem. of Law at 12–23).[17]

In conclusion, "Plaintiffs have made no showing, nor even argued, that there are extraordinary circumstances warranting reconsideration of the [MDL] Court's prior rulings" denying motions for class certification and to amend or alter the Issues Class that was certified.  *Jackson Nat. Life Ins. Co. Premium Litig.*, 209 F.R.D. at 138.  "It follows that these prior rulings are and remain the 'law of the case.'"  *Id.*  And thus, Plaintiffs' third motion for certification (mislabeled as one to amend or alter) is denied.

## II.    Motion to Strike and For Sanctions

Chrysler has moved to strike and for sanctions based on Plaintiffs' class certification motion.  (Chrysler's Mot. to Strike and for Sanctions dated Mar. 17, 2025, Dkt. No. 62-1).  Motions to strike, while within the discretion of a district court, are "generally disfavored."  *Jericho Grp. Ltd v. Mid-Town Dev. Ltd. P'ship*, 816 F. App'x 559,

---

[17] In opposition to Chrysler's sanctions motion, Plaintiffs say that the MDL Court's October 2024 denial of a motion for class certification of a Utah damages class—which was then denied again on reconsideration in February 2025, *see MDL Case*, 2024 WL 4511479, at *1 (E.D. Mich. Oct. 10, 2024), *reconsideration denied*, 2025 WL 732731, at *5 (Feb. 10, 2025)—was a changed circumstance.  (Pls.' Mem. of Law in Opp'n to Strike at 11).  This is not mentioned in their certification brief, and the sanctions brief does not explain how the Utah denial substantively bears on the New York case.  Indeed, it is mystifying how two more *denials* of certification could provide a basis for granting certification here.

563 (2d Cir. 2020) ("Court filings have a presumption of public access when they are relevant to the performance of the judicial function, and motions to strike are generally disfavored."). In light of the decision to deny the motion for certification, the motion to strike is denied.

Sanctions are a different story. 28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "'[Section] 1927 requires a clear showing of bad faith,' and . . . 'an award under [Section] 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Jobar Holding Corp. v. Halio*, No. 24-2879, 2025 WL 1512574, at *3 (2d Cir. May 28, 2025) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).[18]

A renewed motion for class certification standing alone—based upon a misapplication or misapprehension of Rule 23(c)(1)(C)—would not merit sanctions. But "the well from which plaintiffs' counsel is seeking to draw is not bottomless . . . when

---

[18] "A federal court may exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at *3 (quoting *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023)). "'[T]he only meaningful difference between' sanctions imposed under Section 1927 and the court's inherent power is that sanctions under Section 1927 'are made only against attorneys or other persons authorized to practice before the courts,' while sanctions under the district court's inherent power 'may be made against an attorney, a party, or both.'" *Id.* (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012)). The Court does not need to rely on its inherent power for sanctions in light of the Section 1927 sanctions.

making the same losing arguments over and over again constitutes the kind of vexatious litigation that § 1927 and the inherent power of the Court are designed to prevent." *Rosenberg v. Frontline Asset Strategies, LLC*, 556 F. Supp. 3d 157, 166 (E.D.N.Y. 2021). What Plaintiffs have done goes well beyond good-faith litigation conduct. They have filed the same motion every few years, hoping for a different result. To recap: they filed a 2019 motion to certify a New York subclass under Rule 23(b)(3); that is exactly what they filed in 2022 in the MDL Court; and they have filed that same motion now in this Court. When their second motion was denied, the MDL Court called out Plaintiffs' behavior—noting that the motion was a repeat of a motion filed five years before, in violation of a scheduling order, without court permission, and made without any change in law, facts, or circumstances that would justify renewal. And because the conduct was so problematic, the MDL Court struck the motion. Yet, somehow Plaintiffs were not deterred. Their third motion is the recycled motion previously denied twice, again without any change in law or circumstances. It is based on the same canard that the motion was permissible under Rule 23 as an alteration or amendment of a class definition. Asking this Court to take the Rule 23(c)(4) Issues Class and turn it into a Rule 23(b)(3) predominance class while limiting its temporal scope—something which they also tried to do twice before and were twice rebuffed—is no mere amendment or alteration, but a request for a new class altogether. They were chastised for trying this same maneuver before—"plaintiffs here do not seek to 'modify' an existing class—instead they request the certification of . . . wholly new classes." *MDL Case*, 2024 WL 1142348, at *4.

One cannot imagine that having been chastised by one federal court, Plaintiffs could act with even greater recklessness and bad faith. But they managed to do so—by omitting to mention the prior denials and the prior history of this very same motion in the MDL Court. Leaving it to this Court to have to mine a nearly decade-old docket, discover on its own (and through Chrysler's motion for sanctions) that the very relief being sought had been repeatedly denied before—thereby giving the misleading impression that this Court was deciding certification on a blank slate—is the height of chicanery. It is also bad faith misconduct that attempts to deceive this Court, which has caused the waste of time and resources, in a case that is already nearing its 10th year of existence.

And what do Plaintiffs say in response? Essentially that Rule 23(c)(1)(C) permits it, and Chrysler is also behaving badly. But neither Rule 23(c)(1)(C) nor any other rule permits this kind of lawyering, no matter how much case law is twisted out of context. "It is not a Trojan Horse by which Plaintiffs may endlessly reargue the legal premises of their motion." *Stockinger*, 2020 WL 7314794, at *3 (quotations omitted).[19] And whatever

---

[19] One of the more incredulous statements Plaintiffs make is that the "MDL Court has never actually ruled" on whether New York claims and a single New York class could be certified. (Pls.' Mem. of Law in Opp'n to Strike at 14). The MDL Court did exactly what the Plaintiffs suggest it did not. *MDL Case*, 2024 WL 1142348, at *3:

> In their present motion, the plaintiffs essentially ask for a do-over, except they confine their request (by necessity after the jury's verdict) to the surviving causes of action under New York . . . law. *Contrary to the plaintiffs' position, they did previously expressly seek state-by-state certification under Rule 23(b)(3), and that request was denied.*

Chrysler's misconduct may or may not be, the purportedly bad acts of an adversary never justifies your own.  Or immunizes you from sanctions.

"It is an unpleasant task to sanction attorneys."  *Gollomp v. Spitzer*, 568 F.3d 355, 374 (2d Cir. 2009).  The unique circumstances present now warrant them here, unfortunately.  Recall, Plaintiffs were already sanctioned—the MDL Court struck their prior brief.  But non-monetary sanctions were not enough before.  The Court "weigh[s] not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit."  *J.C. v. Zimmerman*, No. 23-7492, 2025 WL 2325898, at *7 (2d Cir. Aug. 13, 2025) (quotations omitted).  And so, Plaintiffs are directed to pay Chrysler attorney's fees and costs incurred in responding to the motion to amend or alter as well as in support of its motion to strike and for sanctions.  *E.g.*, *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 749 (8th Cir. 2018) (affirming Section 1927 sanctions for "attempts to relitigate already decided issues in the form of a motion for clarification"); *Home Indem. Co. v. Arapahoe Drilling Co.*, 5 F.3d 546, 546 (10th Cir. 1993) ("[S]anctions under 28 U.S.C. [§] 1927 are appropriate when an attorney seeks to resurrect matters already concluded.") (collecting cases).

## III.    Motion for Summary Judgment

Chrysler has separately moved for summary judgment seeking dismissal of all the remaining claims alleged by the New York class members.  *First*, it contends that the

---

(emphasis added).  This kind of bogus hair-splitting and misleading presentation was tried before the MDL Court, which called it out, yet it is being tried again here.  All the more reason that sanctions are appropriate.

verdict in the Issues Trial in the MDL Court requires an entry of summary judgment here.  (Chrysler's Mot. for Summ. J. dated Feb. 17, 2025 ("Chrysler's Summ. J. Mem. of Law"), Dkt. No. 59-2 at 10–16).  This argument is a meritless re-litigation of arguments that Chrysler already lost.  *Second*, Chrysler contends all of Plaintiffs' claims fail as a matter of law.  (*Id.* at 16–27).  In this regard, Chrysler is mostly correct—Plaintiffs' claims under GBL § 350, and for fraudulent concealment, express warranty, unjust enrichment, and violation of MMWA—are dismissed.  The only claim that survives is the GBL § 349 claim.

### A.    Standard for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party."  *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P.

56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials."  *Id.* R. 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion.  *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims.  *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation).  In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses.  *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir.

35

1994).  Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded."  *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)).  The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence.  *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).  The Court must also disregard conclusory denials that lack citations to admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.*  They should contain factual assertions, with citation to the record.  They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).  Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary

36

judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

### B.    Undisputed Material Facts

The Court finds the following facts—drawn from the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

Lynd leased a Class Vehicle, a 2015 Jeep Grand Cherokee, in late 2014. (Chrysler's Rule 56.1 Stmt. of Facts dated Feb. 17, 2025 ("Chrysler's 56.1 Stmt."), Dkt. No. 59-1 ¶ 1; Pls.' Counter Stmt. dated Mar. 17, 2025 ("Pls.' 56.1 Stmt. and Counterstmt."), Dkt. No. 59-10 ¶ 1). At the end of his lease, he purchased the vehicle. (*Id.* ¶ 13; Chrysler's 56.1 Stmt. ¶ 13). The parties dispute whether Lynd saw any Jeep-specific brochures or misleading advertisements at the dealership where he leased his vehicle: Chrysler claims that he did not, Plaintiffs claim that prior to leasing the vehicle, he researched the vehicle on the manufacturer's website and reviewed brochures at the dealership. (*Id.* ¶ 4; Pls.' 56.1 Stmt. and Counterstmt. ¶ 4).

Mack purchased a Class Vehicle—also a 2015 Jeep Grand Cherokee—in early 2016. (*Id.* ¶ 21; Chrysler's 56.1 Stmt. ¶ 21). Again, the parties dispute what marketing

materials or advertisements Mack saw prior to the purchase of her vehicle: Chrysler claims that Mack did not view any website or marketing materials prior to purchase, and Plaintiffs claim that she did review certain documents when she purchased the vehicle, and that she also saw advertising campaigns by Chrysler for that specific car. (*Id.* ¶ 26; Pls.' 56.1 Stmt. and Counterstmt. ¶ 26).

It is undisputed that at the time both Plaintiffs leased or purchased their vehicles, the conclusions of certain human interface studies conducted by Lexant, a consumer research firm, were known only to Chrysler. (*Id.* ¶ 127; Chrysler's Reply Rule 56.1 Stmt. dated Apr. 11, 2025 ("Chrysler's Reply 56.1 Stmt."), Dkt. No. 59-31 ¶ 127).

Chrysler started working with Lextant in June 2010 to study the usability of a monostable gearshifter (the "Concept B Monostable"). (*Id.* ¶ 88; Chrysler's 56.1 Stmt. ¶ 39; Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 39, 88). The study tested 21 employees of Chrysler to see if they could shift a simulated vehicle into different gears. (*Id.* ¶¶ 41–42, 88–89; Chrysler's 56.1 Stmt. ¶¶ 41–42; Chrysler's Reply 56.1 Stmt. ¶¶ 88–89). Of the 21 participants, only 6 successfully shifted the vehicle into the Park gear on the first attempt, while only 3 shifted into the Reverse gear on the first attempt, (*id.* ¶ 89; Pls.' 56.1 Stmt. and Counterstmt. ¶ 89), and participants continued to make mistakes after learning how the shifter operated. (*Id.* ¶ 90; Chrysler's Reply 56.1 Stmt. ¶ 90). In September 2010, Chrysler again engaged Lextant for another study. (*Id.* ¶ 93; Pls.' 56.1 Stmt. and Counterstmt. ¶ 93). In this study, of the 20 participants, only 60% were able to reverse, drive, and park the car with the Concept B Monostable, while other gearshifters had 95% to 100% success rates. (*Id.* ¶ 95; Chrysler's Reply 56.1 Stmt. ¶ 95).

In October 2010, Chrysler ran yet another study with Lextant, which included the Concept B monostable shifter, and another monostable shifter (the "Audi Monostable" shifter). (*Id.* ¶ 97; Chrysler's 56.1 Stmt. ¶¶ 50–51; Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 50–51, 97). The Audi Monostable shifter recorded 162 errors; other non-monostable shifters recorded as low as 3 or 6 errors. (*Id.* ¶ 97; Chrysler's Reply 56.1 Stmt. ¶ 97). In November 2010, Chrysler decided to move forward with installing the Audi Monostable in the Class Vehicles. (*Id.* ¶ 99; Pls.' 56.1 Stmt. and Counterstmt. ¶ 99).

In August 2012, Chrysler and Lextant conducted another shifter study. The results of the study showed that the monostable shifter performed the worst of the various shifters, and Chrysler concluded that the monostable shifter was "difficult to understand and use, and requires more attempts to shift to the desired gear, and is not recommended." (*Id.* ¶¶ 107–08 (quotations omitted); Chrysler's Reply 56.1 Stmt. ¶¶ 107–08).

In August 2015, after the Class Vehicles had entered the market, the National Highway Traffic Safety Administration ("NHTSA") began to investigate the Class Vehicles due to reports of rollaways. (*Id.* ¶ 111; Chrysler's 56.1 Stmt. ¶ 70; Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 70, 111). In April 2016, Chrysler issued a recall notice (prompting the NHTSA to close its investigation). (*Id.* ¶¶ 77, 112; Chrysler's 56.1 Stmt. ¶ 77; Chrysler's Reply 56.1 Stmt. ¶ 112). As part of the recall, Chrysler released Auto Park, which "automatically shifts the transmission to Park if the driver unlatches the seatbelt, removes his or her foot from the brake, leaves the engine running, and opens

39

the door without shifting to Park."  (Chrysler's 56.1 Stmt. ¶ 75; Pls.' 56.1 Stmt. and Counterstmt. ¶ 75).

Both Plaintiffs claim that they, and the class, were denied the benefit of their bargain when they purchased or leased their vehicles.  (*Id.* ¶ 80; Chrysler's 56.1 Stmt. ¶ 80).  In so doing, they rely on a report by expert witness Dr. Justine Hastings, which was subsequently adopted by experts Dr. J. Michael Dennis and Dr. Michael Williams. (*Id.* ¶¶ 81–82; Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 81–82).  This report utilizes a choice-based conjoint survey methodology to determine classwide damages.[20]  (Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 83, 116; Chrysler's 56.1 Stmt. ¶ 83; Chrysler's Reply 56.1 Stmt. ¶ 116).  Dr. Hastings calculated the damages per Class Vehicle to be $ 13,504.  (*Id.* ¶ 117; Pls.' 56.1 Stmt. and Counterstmt. ¶ 117).

## C.    Chrysler's Meritless Recycling of Previously Rejected Arguments

### 1.    Seventh Amendment

The Seventh Amendment provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States[.]"  U.S. Const. amend. VII. This limitation requires that "a given issue may not be tried by different, successive juries."  *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999).

Chrysler argues that a trial on the three issues left to resolve for the New York class members would entail reexamination of an issue already tried by the jury in the

---

[20] Conjoint analysis is a widely used methodological technique in market research that utilizes surveys to determine "how features of a product, or descriptions of a product's features, affect consumers' [willingness to pay]."  (Expert Report of Dr. Hastings dated May 30, 2019, attached as Ex. 43 to Decl. of Dennis A. Lienhardt in Supp. of Pls.' Class Amendment Mem. of Law, Dkt. No. 60-45 ¶ 50 & n.37).

Issues Trial: concealment.  (Chrysler's Summ. J. Mem. of Law at 10–12).  Chrysler's basic argument is that the Issues Trial resolved concealment for 19 other states on a generic basis (without state-specific jury instructions), making it impossible to hold another jury trial on that issue again (even for the New York class members).  (*Id.*).

Yet, a different version of this argument was already made and rejected. Following the Issues Trial, Chrysler argued that because the jury had already resolved *design defect*, permitting a second Issues Trial for New York class members would violate the Seventh Amendment's reexamination bar.  (Def.'s Mot. for Entry of J. dated Oct. 21, 2022, *MDL Case*, Dkt. No. 872 at 14–15, 17); *MDL Case*, 685 F. Supp. 3d at 548 ("Chrysler argues in its motion that it is entitled to a judgment on all of the claims . . . in the four transferred cases because the definition of 'design defect' in those states . . . [including] New York . . . parrots the definitions in other states that the jury considered[.]").

Chrysler was judicially estopped from making this argument.  Chrysler had initially and repeatedly used the Seventh Amendment to argue that the New York claims should be *excluded* from the Issues Trial.  *See MDL Case*, 685 F. Supp. 3d at 555 ("In its pretrial motions . . . [Chrysler] argued on the same legal grounds for [exclusion of transferred claims from the Issues Trial], invoking both Due Process and Seventh Amendment language each time.").  In an about-face, Chrysler took the position that the Seventh Amendment required that the New York claims be dismissed, because they were encompassed by the jury's verdict:

> [Chrysler] merely resurrects in contrapositive form the same arguments
> premised on . . . "Seventh Amendment" concerns that it previously posed

41

when it argued strenuously that none of the claims from the transferred cases [including New York]—or any portion of them—could be tried before this Court in the first instance.

*Id.* at 554.

And this deceptive, "Janus-like" reversal, was impermissible gamesmanship.

The MDL Court concluded Chrysler was estopped from raising this argument:

[Chrysler's] arguments run headlong into some fundamental concepts that are designed to discourage cynical retrenching that deprives litigants of their day in court. For one: judicial estoppel . . . [which] "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."

*Id.* at 554–55 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

The same judicial estoppel bar applies again. Having first in the MDL Court taken the position that the Seventh Amendment precluded resolution of the New York class members claims—and having prevailed on that argument—here, it cannot assert the opposite argument.[21]

## 2.    Issue Preclusion

Chrysler also tries to resurrect the identical argument that it previously made: that the Issues Trial verdict is issue preclusive for any trial here for New York class members. This argument fails again, like it did the first time.

The prior Issues Trial—at Chrysler's urging—did not include the claims of New York class members. And as such, "the plaintiffs and absent class members from New York . . . have not had their day in court." *MDL Case*, 685 F. Supp. 3d at 555–56. That is

---

[21] The Seventh Amendment argument is likely barred by the law of the case doctrine, *see supra* at 18–20, but the Court need not reach that argument.

the *sine qua non* of issue preclusion: that the party being precluded had a full and fair opportunity to litigate the issue.  *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

And the MDL Court already rejected Chrysler's argument that despite being excluded from the trial itself, the other states represented New Yorkers' interests, and therefore their class members could be bound by the jury verdict:

> Because the Court excluded claims from the New York and California plaintiffs from the common issues trial, those class representatives could not have participated in the trial, and in fact they did not.  And because the class representatives from each state were appointed solely to represent their respective jurisdictions, none of the other class representatives reasonably could have understood that they were charged with representing New York or California class members.

*MDL Case*, 685 F. Supp. 3d at 556.

The argument that Chrysler now makes is no different than the argument already rejected.  The prior decision of the MDL Court rejecting the attempt to issue preclude the current New York class members is law of the case.  *See supra* at 18–20.  At bottom, the MDL Court held that New York class members have not had their day in court.  *MDL Case*, 685 F. Supp. 3d at 554–56; *MDL Case*, 2024 WL 1142348, at *3 ("[T]he trial of the fact questions under New York and California law must occur in the first instance in the transferor districts, because the claims of those plaintiffs were excluded entirely from the issue trial conducted by this Court.").  Rearguing the point anew does not change that reality.

*       *       *       *

Chrysler stoops to the same unprofessional deceptive litigation tactics that Plaintiffs engaged in, conduct that reflects a mentality to disregard candor and ethics at

the altar of winning at any cost.  Chrysler's "Procedural History" section of its papers makes no mention of its prior Seventh Amendment arguments—either that it made the opposite argument at the outset of the MDL Case, or that it made the same argument following the Issues Trial.  (Chrysler's Summ. J. Mem. of Law at 2–3).  It omits any discussion of prior rejection of the argument by the MDL Court in the procedural history or the remainder of the brief.  (*Id.* at 2–27).  It does the same thing with the issue preclusion argument: it is the same rejected, recycled argument, presented anew here. And then on reply, Chrysler continues to mislead: it buries its acknowledgement that the MDL Court found the arguments barred by judicial estoppel in its response to Plaintiffs' Rule 56.1 statement,[22] without any such acknowledgement—or citation to the MDL Court's opinion—in its brief.[23]  (*See id.* at 2–6).  Instead, it proceeds to put forth a

_____

[22] (*See* Chrysler's Reply 56.1 Stmt. ¶ 134 ("While [Chrysler] acknowledges that the MDL Court denied its motion for entry of judgment based on judicial estoppel, [Chrysler] disputes that judicial estoppel applies and disputes that the MDL Court had the authority to determine the preclusive effect of its own judgments.")).

[23] Chrysler frames the judicial estoppel as *Plaintiffs'* argument in its reply brief. (*See* Reply Mem. in Supp. of Chrysler's Mot. for Summ. J. dated Apr. 11, 2025 ("Chrysler's Summ. J. Reply Mem. of Law"), Dkt. No. 59-32 at 2).

flurry of arguments as if judicial estoppel is before any court for the first time.[24]

Chrysler escapes serious monetary sanctions largely by accident. Plaintiffs failed to move for sanctions (they should have—but the Court will not entertain the motion now). And in comparison, Plaintiffs' conduct is somehow worse: they already were sanctioned by the MDL Court (when their motion was struck). While Chrysler's motion is only the second time it makes the same argument, Plaintiffs' motion has the rare distinction of being the same one made for a third time. But Chrysler's behavior is nothing to be proud of, and both sides wear badges of ignominy.

Hiding the ball in litigation is not a path to victory in federal court, but a sure-fire way to end up in disciplinary proceedings. As far as this Court is concerned, both sides have lost all credibility. No representation by the lawyers on either side can be trusted. Their conduct reflects a disrespect of Judge Lawson's decisions and the MDL process, and an utter disregard for the duty of candor. Should either side continue this behavior, in addition to *sua sponte* imposing monetary sanctions (payable to the Clerk of

---

[24] And even those arguments are meritless. Chrysler leans heavily on the technicalities of the motions it made in the MDL case. (*See id.* at 2–3). True, it may be that Chrysler moved to decertify the class, and the MDL Court denied the request. And yes, after Chrysler's motion to decertify the class was denied, Chrysler moved for remand, which the MDL Court again denied. That the motions were denied is not the point: Chrysler brought both motions in an effort to create an outcome in which the New York class members would effectively be kept out of the Issues Trial. And the MDL Court granted that outcome. Although it did not *technically* achieve decertification or remand, what Chrysler sought in substance, it received. And then it substantively sought the exact opposite: to bind the New York class members with the trial outcome.

Court), the Court will make appropriate referrals to state court bars and the disciplinary committee for the Eastern District of New York.[25]

### D.    Dismissal As A Matter of Law

Chrysler claims that all of Plaintiffs' causes of action—GBL § 349 and § 350, fraudulent concealment, express warranty, unjust enrichment, and violation of MMWA—are barred as a matter of law.  (Chrysler's Summ. J. Mem. of Law at 16–27). This is the only set of arguments, in the hundreds of pages of briefing from both sides, that a court is addressing for the first time.

Plaintiffs concede they are no longer pursuing any claims other than the GBL claims.  (*See* Pls.' Opp'n to Chrysler's Mot. for Summ. J. dated Mar. 17, 2025 ("Pls.' Mem. of Law in Opp'n to Summ. J."), Dkt. No. 59-11 at 2 n.2 ("Plaintiffs are . . . no longer pursuing any of these claims; thus, there is no need to address [Chrysler]'s arguments on these claims.")).  Summary judgment is therefore granted, and the claims for fraudulent concealment, express warranty, unjust enrichment, and MMWA are dismissed with prejudice.

Of the remaining claims, the GBL § 349 claims survives summary judgment, but the GBL § 350 claim does not.

---

[25] Somehow, Plaintiffs believe they can file yet *another* motion for class certification if their present motion to amend the class definition is denied.  (*See* Pls.' Class Amendment Mem. of Law at 13 ("Here, in the absence of class certification, even if Plaintiffs prevail in a separate issues trial before this Court, there will have to be extensive additional motion practice, including potentially a second motion for class certification.")).  But the Court will not tolerate any such motion in light of the abuse of the litigation process documented in this opinion.

E.      NY GBL § 349

"Section 349 of the GBL provides a cause of action for any person injured by '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing o[f] any service.'" *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting GBL § 349(a)). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id.* (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).

"'Deceptive acts' are acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.* (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). An omission of material information can also constitute a violation of § 349. To set forth an actionable omission, a plaintiff "must show that 'the business alone possesse[d] material information that is relevant to the consumer and fail[ed] to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'" *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

Chrysler interprets Plaintiffs' omission claim as a failure to disclose information about the gearshifter's lack of "physical gear position that would clearly notify drivers." (Chrysler's Summ. J. Mem. of Law at 17). But that is not Plaintiffs' claim. What Plaintiffs contend, instead, is that Chrysler omitted material information when it failed

47

to inform consumers that the Class Vehicles had shifters that its "own studies confirmed made it difficult to engage the shifter in the correct gear." (Pls.' Mem. of Law in Opp'n to Summ. J. at 22).

And under this framing, there are a bevy of undisputed facts that permit this omission theory to go forward. Chrysler conducted multiple studies into the usability of the monostable gearshifter (or similarly designed shifters); tested shifting mistake rates and compared it to alternative shifters; and found generally that the gearshifter (or similarly designed shifters) had lower rates of successful shifting attempts, including attempts to shift into Park. (Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 85–98, 126; Chrysler's Reply 56.1 Stmt. ¶¶ 85–98, 126). And despite this knowledge, of which only Chrysler had access to, it went ahead with installing the gearshifter in the Class Vehicles. (*Id.* ¶¶ 99, 127; Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 99, 127). It is undisputed that when Lynd and Mack bought or leased their vehicles, only Chrysler had knowledge of the conclusions of the studies they had previously conducted. (*Id.* ¶ 127; Chrysler's Reply 56.1 Stmt. ¶ 127). These facts—which Chrysler has not disputed in its motion—can constitute the basis of a viable GBL § 349 claim.[26]

---

[26] Chrysler argues that Lynd's purchase of one of the class vehicles *after* the commencement of a lawsuit provides that the deceptive act must have been immaterial. (Chrysler's Summ. J. Reply Mem. of Law at 10–11). But Plaintiffs are proceeding on an omission theory at the time of purchase *or lease*—and here, that Lynd did not have knowledge of the deception at the time he made the initial decision to *lease*, even if Lynd knew of Chrysler's deceptive acts when he made a subsequent decision to purchase the leased vehicle. At best, this argument affects Lynd's damages, not whether Lynd has a § 349 claim.

As for the third element, injury, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015).

Plaintiffs' injury and damages rest largely on an expert report by Dr. Justine Hastings.[27]  (*Id.* ¶ 83; Chrysler's 56.1 Stmt. ¶ 83).  Dr. Hastings's damages analysis determined how much class members overpaid at the time of sale ("a choice-based conjoint survey methodology").  (*Id.*; Pls.' 56.1 Stmt. and Counterstmt. ¶ 83).  Chrysler argues that the damages model offered by Dr. Hastings is flawed.  (*See* Chrysler's Summ. J. Mem. of Law at 21; Chrysler's Summ. J. Reply Mem. of Law at 8–10).  Chrysler has already attacked this methodology before—twice—and here, it now seeks to do so for a third time.

Before the MDL Court certified the Issues Class, Chrysler moved to exclude Dr. Hastings's opinions.  (Mot. to Exclude Test. of Justine Hastings dated Jan. 31, 2019, *MDL Case*, Dkt. No. 284).  The MDL Court denied the motion.  *MDL Case*, 382 F. Supp. 3d 687, 699 (E.D. Mich. 2019).  It noted that "conjoint analysis is a widely accepted method for estimating point-of-sale damages in consumer class actions alleging that product defects were concealed from buyers."  *Id.* at 697.  Ultimately, "Dr. Hastings ha[d] supported her testimony with sufficient authority to proffer an opinion that common

---

[27] Dr. Hastings is the author of the expert report that Plaintiffs largely rely on. Plaintiffs used two other damages experts, Dr. J. Michael Dennis and Dr. Michael Williams, when Dr. Hastings became unavailable before the Issues Trial, and Dr. Dennis and Dr. Williams adopted Dr. Hastings's report.  (Chrysler's 56.1 Stmt. ¶¶ 81–83; Pls.' 56.1 Stmt. and Counterstmt. ¶¶ 81–83).

damages were sustained and can be estimated by reliable and accepted methods." *Id.* at 699.

After the close of discovery, Chrysler moved again to exclude her report (as adopted by Dr. Dennis). (Mot. to Exclude Test. of J. Michael Dennis dated May 12, 2022, *MDL Case*, Dkt. No. 778). Again, the MDL Court denied the motion. "As the Court previously observed, '[t]he defendant has not identified any significant way in which Dr. Hastings's proposed analysis deviates from the usual principles by which conjoint analysis surveys are designed[.]'" *MDL Case*, 2022 WL 3928377, at *3 (E.D. Mich. Aug. 31, 2022) (quoting *MDL Case*, 382 F. Supp. 3d at 697–98). In other words, the MDL Court already twice determined that Dr. Hastings's methodology is a sound and reliable method of calculating damages in cases such as this. Any attack on the methodology—which is all that is at play here in Chrysler's argument against Plaintiffs' price premium theory—is barred by law of the case doctrine. *See supra* at 18–20.

Chrysler's other argument is that it provided an adequate remedy in the form of the Auto Park fix. (Chrysler's Summ. J. Mem. of Law at 22–23). A party does not have a viable claim of injury under § 349 if they were provided an adequate remedy, *see Kommer v. Ford Motor Co.*, No. 17-CV-296, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017), because they would have received the benefit of their bargain. But there are material issues in dispute about whether the Auto Park feature is "adequate." Chrysler claims that Plaintiffs admit that dangerous rollaways are eliminated with the Auto Park feature. (Chrysler's 56.1 Stmt. ¶ 76). Besides disputing this, (Pls.' 56.1 Stmt. and Counterstmt. ¶ 76), Plaintiffs' theory of error focuses on more than rollaway risks.

50

Plaintiffs' liability expert, who conducted a study of a Class Vehicle with Auto Park, observed that there were still a number of errors, including placing the vehicle in the incorrect gear.  (Rosenberg Expert Report dated Oct. 22, 2018, attached as Ex. 36 to Decl. of Dennis A. Lienhardt in Supp. of Pls.' Class Amendment Mem. of Law, Dkt. No. 60-38 at 77, 85–86).

Because there are material issues in dispute regarding each element of the § 349 claim, summary judgment is denied.  *See, e.g.*, *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-209, 2022 WL 4357555, at *26–*27 (E.D.N.Y. Sept. 20, 2022) (denying summary judgment where manufacturer had previously known of injuries from an automatic vehicle door closure mechanism, and omitted that information from representations to consumers); *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 106 (W.D.N.Y. 2018) ("[M]ultiple questions of material fact preclude summary judgment on plaintiff's consumer protection claim . . . including: whether the brake parts at issue were actually defective; whether and to what extent defendant was aware of the defect; whether defendant . . . omitted information concerning the defect . . . ; whether the omission of such information is material[.]").

### F.    NY GBL § 350

"N.Y. GBL Section 350 prohibits '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"  *Orlander*, 802 F.3d at 300 (quoting GBL § 350).  A violation of § 350 requires the same three base elements as § 349 in relation to the false advertisement at issue: that the false

advertisement was (1) consumer-directed, (2) materially misleading, and (3) caused injury to the consumer. *Id.*

While "§ 349 prohibits [d]eceptive acts or practices[,] . . . § 350 prohibits [f]alse advertising[.]" *Richardson v. Edgewell Pers. Care, LLC*, No. 23-128, 2023 WL 7130940, at *1 (2d Cir. Oct. 30, 2023) (quotations omitted); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").

Plaintiffs claim that Chrysler disseminated advertising, marketing, and other publications or statements throughout New York that were false because they omitted information regarding the dangerous risk of the defective shifters. (Am. Compl. ¶ 184). They claim that they themselves reviewed certain documents, saw advertising campaigns, and examined Chrysler's website. (Pls.' Mem. of Law in Opp'n to Summ. J. at 25). Chrysler argues that Plaintiffs' claim fails because it does not identify a false advertisement. (Chrysler's Summ. J. Mem. of Law at 23–24; Chrysler's Summ. J. Reply Mem. of Law at 11–12). Plaintiffs' only rejoinder to this argument is that reliance is not an element of a GBL § 350 claim, and these Plaintiffs need not have seen the advertisement to prevail on this claim. (Pls.' Mem. of Law in Opp'n to Summ. J. at 23–25).

True, but irrelevant. The absence of a reliance element does not obviate the need for a plaintiff to identify the misleading advertisement. Once identified, a plaintiff can proceed to show that the advertisement was generally placed into the marketplace and affected the decisions of all purchasers and thus caused injury; because reliance is not

an element, the plaintiff does not need to show that the advertisement affected their

individual decision to purchase.  But without identifying something, a factfinder cannot

evaluate whether the statement or publication was misleading or false and whether it

was causally related to the claimed damages.  None of Plaintiffs' briefs, nor their Rule

56.1 statements, challenge or identify any specific advertisement, brochure, or

commercial.  (*Id.* at 5, 23–26; *see* Pls.' 56.1 Stmt. and Counterstmt.).  Plaintiffs cannot

wish away the elements of falsity and causation under a generic global theory that

Chrysler advertised the cars at issue and no advertisement mentioned its knowledge of

the gearshift defect.  No GBL § 350 claim can survive in such a posture.  *See, e.g.*, *Cline v.*

*TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 637 (S.D.N.Y. 2016) (dismissing plaintiffs'

§ 350 claim because they did not allege "even a single specific advertisement");

*Manchanda v. Navient Student Loans*, No. 19-CV-5121, 2020 WL 5802238, at *5 (S.D.N.Y.

Sept. 29, 2020) ("[A]side from [plaintiff]'s conclusory assertion that 'there is no question

that there exists false advertising' because '[defendant] advertised itself as a student

loan business,' the Complaint fails to plead facts concerning any advertising by either

Defendant.  Accordingly, this claim is dismissed." (citations omitted)).

## CONCLUSION

For the reasons described above, Plaintiffs' motion to amend or alter the class

definition is denied.  Chrysler's motion to strike is denied, but its motion for sanctions is

granted.  Chrysler's motion for summary judgment is granted as to the claims for GBL

§ 350, fraudulent concealment, express warranty, unjust enrichment, and violation of

the MMWA, which are dismissed with prejudice, and denied as to the claim for GBL § 349.

Chrysler's counsel is directed to provide invoices to Plaintiffs' lead counsel by September 2, 2025, and Plaintiffs must file a letter indicating those fees and costs have been paid by September 18, 2025.

SO ORDERED.

*/s/ Sanket J. Bulsara*   August 19, 2025
SANKET J. BULSARA
United States District Judge

Date:  August 19, 2025
        Central Islip, New York